**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

**CHERYL G.,**

                         **Plaintiff,**

**v.**

                                                  **20-CV-1631**

**COMMISSIONER OF SOCIAL SECURITY,**

                        **Defendant.**

## DECISION AND ORDER

Pursuant to 28 U.S.C. § 636(c), the parties have consented to have the undersigned conduct any and all further proceedings in this case, including entry of final judgment. Dkt. No. 15. Cheryl G. ("Plaintiff"), who is represented by counsel, brings this action pursuant to the Social Security Act ("the Act") seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying her application for benefits. This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Dkt. Nos. 11, 12. For the following reasons, Plaintiff's motion (Dkt. No. 11) is denied, and the Commissioner's motion (Dkt. No. 12) is granted.

## BACKGROUND

On February 7, 2019, Plaintiff filed for Social Security Income ("SSI") and Disability Insurance Benefit ("DIB") alleging that she became disabled on March 15, 2018, by diastolic heart dysfunction, edema in her legs and feet, major depressive

disorder, anxiety, and high blood pressure.  Tr. at 330-37., 356.[1]  Plaintiff's claim was denied at the initial level, and she requested review.  Tr. at 217-26, 257-70.

Administrative Law Judge Vincent M. Cascio ("the ALJ") conducted a hearing on April 14, 2020.  Tr. at 133-63.  Plaintiff, who was represented by counsel, testified as did a vocational expert.  Tr. at 133-63.  On April 23, 2020, the ALJ issued a decision in which he found that Plaintiff was not under a disability as defined by the Act since November 15, 2018.  Tr. at 109-27.  The Appeals Council denied Plaintiff's request for review making the ALJ's decision final.  Tr. at 1-7.  This action followed.  Dkt. No. 1.

## LEGAL STANDARD

**Disability Determination**

A person making a claim for Social Security benefits bears the ultimate burden of proving disability throughout the period for which benefits are sought.  *See* 20 C.F.R. § 416.912(a); *Schauer v. Schweiker*, 675 F.2d 55, 59 (2d Cir. 1982).  The claimant is disabled only if she shows that she is unable to engage in any substantial gainful activity due to any medically determinable physical or mental impairment which has lasted, or can be expected to last, for a continuous period of at least 12 months.  42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.909; *see Barnhart v. Walton*, 535 U.S. 212, 216-22 (2002).

---

[1] Citations to "Tr. __" refer to the pages of the administrative transcript, which appears at Docket No. 10.

A disabling physical or mental impairment is an impairment that results from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D). Congress places the burden upon the claimant to establish disability by "furnish[ing] such medical and other evidence of the existence [of a disability] as the Commissioner . . . may require." 42 U.S.C. § 1382c(a)(3)(H)(i). The function of deciding whether a person is under a disability within the meaning of the Act belongs to the Commissioner. 20 C.F.R. § 416.927(e)(1); *Pena v. Chater*, 968 F. Supp. 930, 937 (S.D.N.Y. 1997).

In keeping with this function, the Commissioner has established a five-step sequential evaluation for adjudicating disability claims, which is set forth at 20 C.F.R. § 416.920. The claimant has the burden at the first four steps. The Commissioner has the burden at the fifth step of demonstrating that the claimant can perform other work existing in significant numbers in the national economy; but the burden of proving disability is always on the claimant. *See* 20 C.F.R. § 416.920; *Lesterhuis v. Colvin*, 805 F.3d 83, 87 (2d Cir. 2015) (stating that "[t]he claimant bears the ultimate burden of proving [disability] throughout the period for which benefits are sought") (citation omitted).

**District Court Review**

42 U.S.C. § 405(g) authorizes a district court "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of

3

the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).  Section 405(g) limits the scope of the Court's review to two inquiries:  whether the Commissioner's conclusions were based upon an erroneous legal standard, and whether the Commissioner's findings were supported by substantial evidence in the record as a whole.  See *Green-Younger v. Barnhart*, 335 F.3d 99, 105-106 (2d Cir. 2003).

Substantial evidence is "more than a mere scintilla."  *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009).  "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.* (emphasis added and citation omitted).  The substantial evidence standard of review is a very deferential standard, even more so than the "clearly erroneous" standard.  *Brault v. Comm'r of Soc. Sec.*, 683 F.3d 443, 447-48 (2d Cir. 2012) (citing *Dickinson v. Zurko*, 527 U.S. 150, 153 (1999)).

When determining whether the Commissioner's findings are supported by substantial evidence, the Court's task is "'to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn.'" *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999) (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam)).  If there is substantial evidence for the ALJ's determination, the decision must be upheld, even if there is also substantial evidence for the plaintiff's position.  *See Perez v. Chater*, 77 F.3d 41, 46-47 (2d Cir. 1996); *Conlin ex rel. N.T.C.B. v. Colvin*, 111 F. Supp. 3d 376, 384 (W.D.N.Y. 2015).  Likewise, where the evidence is susceptible to more than one rational interpretation, the Commissioner's

conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

## DISCUSSION AND ANALYSIS

**The ALJ's Decision**

The ALJ analyzed Plaintiff's claims using the familiar five-step process. Lynch v. Astrue, No. 07-CV-249-JTC, 2008 WL 3413899, at *2 (W.D.N.Y. Aug. 8, 2008) (detailing the five steps).  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since November 15, 2018, her alleged onset date.  Tr. at 114.  The ALJ concluded at step two that Plaintiff suffered from the severe impairments of morbid obesity, hypertension, mild left ventricle hypertrophy, and edema of the lower extremities.  Tr. at 115.  At step three, he concluded that Plaintiff did not have an impairment or combination of impairments which met or equaled the Listings.  Tr. at 118.

The ALJ found that Plaintiff retained the RFC to perform light work as defined by 20 C.F.R. 404.1567(b) and 416.967(b) except that she can frequently climb ramps, stairs, ropes, ladders and scaffolds; can frequently balance, stoop, crouch, kneel and crawl; and she should avoid unprotected heights and hazardous machinery.  Tr. at 118.  Relying on the VE's testimony, the ALJ found that Plaintiff could perform her past relevant work as a Customer Service Representative as actually and generally performed, and the job of Sales Associate as generally performed.  Tr. at 126.  Accordingly, the ALJ determined that Plaintiff had not been under a disability since November 15, 2018, her alleged onset date.  Tr. at 127.

**Judgment on the Pleadings**

As noted above, the parties have cross-moved for judgment on the pleadings.  Dkt. Nos. 11, 12.  Plaintiff argues that with respect to Plaintiff's physical RFC, the ALJ failed to explain why he did not adopt limitations from the opinions of Drs. Elizabeth Kidder (treating physician) and Russell Lee (consultative examiner), despite finding that their opinions were persuasive as a whole, and improperly relied on his lay opinion to assess Plaintiff's left shoulder condition.  Plaintiff also contends that the ALJ failed to properly evaluate her mental impairments, finding them non-severe at step two.  For the following reasons, this Court finds that remand is not warranted.

**Residual Functional Capacity**

"Your [RFC] is the most you can still do despite your limitations."  20 C.F.R. § 416.945(a).  RFC "is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities."  Social Security Ruling 96-8p, 1996 WL 374184, at *2.  "This assessment of RFC is used at step 4 of the sequential evaluation process to determine whether an individual is able to do past relevant work, and at step 5 to determine whether an individual is able to do other work, considering his or her age, education, and work experience."  *Id.* (emphasis supplied).

The ALJ limited Plaintiff to a range of light work with additional postural limitations.  Tr. at 118.  In support of this RFC, the ALJ noted the following facts from Plaintiff's medical history:  Plaintiff had a history of hypertension with poor compliance

6

with treatment, and that during times of compliance, Plaintiff denied associated issues from hypertension.  Tr. at 120-21, 474 (noting "long history of medication and recommendation compliance"); 476 (stated that claimant reported associated symptom of edema but no headache, visual disturbance, dizziness, or shortness of breath); 957 (noting long history of hypertension that caused no interference in daily activities and no associated symptoms of chest pain, dizziness, headache, palpitations, and syncope).  Plaintiff had a history of left ventricular hypertrophy (LVH), but echocardiograms revealed that it was "mild."  Tr. at 121, 473, 813.  Plaintiff's respiratory examinations throughout the relevant period consistently showed regular respirations, clear lungs, and normal cardiovascular function.  Tr. at 121, 474, 814, 847, 955, 959.

       The ALJ noted that Plaintiff never underwent a renal Doppler ultrasound despite multiple orders from her provider to do so, and that Plaintiff continued to smoke.  Tr. at 121, 474, 475 (smoking five cigarettes a day), 814, 848, 959.  Regarding the edema in Plaintiff's lower extremities, the ALJ noted that despite her complaints of having swelling in both legs, Plaintiff did not see a cardiologist for treatment and frequently did not pick up her hypertension medications.  Tr. at 121, 474 (noting mild lower extremity edema secondary to uncontrolled hypertension and further noting long history of noncompliance), 957, 476, 814, 816, 827, 830-31, 837.  Despite noncompliance, Plaintiff walked with a smooth, even, and well-balanced gait on examination.  Tr. at 122, 847, 950.

The ALJ also considered Plaintiff's self-reports regarding her activities of daily living. By her own account, Plaintiff was able to cook while sitting, do laundry, drive, shop in stores, and shower and dress independently. Tr. at 122, 371-73, 795, 802. It was wholly appropriate for the ALJ to consider these activities in determining whether Plaintiff was capable of working. *See Cichocki v. Astrue*, 729 F.3d 172, 178 (2d Cir. 2013); *see also Poupore v. Astrue*, 566 F.3d 303, 307 (2d Cir. 2009) (holding that the ALJ properly considered Plaintiff's ability to perform assorted daily chores); *Lewis v. Colvin*, 548 F. App'x 675, 677 (2d Cir. 2013) (holding that the ALJ's RFC finding was supported by substantial evidence including activities of daily living). The ALJ reasonably determined that such a range of daily activities was inconsistent with Plaintiff's allegation that she could not perform any type of work, as Plaintiff's activities of daily living are an important indicator of her level of functioning. *See* 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i); Social Security Ruling (SSR) 16-3p; *Cichocki*, 729 F.3d at 178.

The ALJ also considered the prior administrative finding of D. Brauer, M.D. and C. Krist, D.O., who assessed that Plaintiff could work at the medium exertional level. Tr. at 124, 171-72, 183-84, 197-99, 210-12. The ALJ found their assessments only somewhat persuasive, noting that records post-dating their review and Plaintiff's subjective complaints indicated that she was somewhat more limited. Tr. at 124. Although the ALJ found this assessment of limited persuasiveness, it nonetheless supports his conclusion that Plaintiff could perform light work with some postural limitations. Tr. at 124; 20 C.F.R. §§ 404.1513a(b)(1), 416.913a(b)(1) (State agency

8

physicians are highly qualified experts in the evaluation of the medical issues involved in disability claims under the Act).

Regarding Dr. Lee's consultative exam (Tr. at 124-25, 794-98), the ALJ acknowledged that although Plaintiff had a limited range of motion of the cervical and lumbar spine, hips, and knees suggesting limitation (Tr. at 124, 796-97), Plaintiff could walk on heels and toes without difficulty, had a normal stance, needed no help changing for the exam or getting on and off the exam table, and was able to rise from a chair without difficulty.  Tr. at 796-97.  Plaintiff also had stable and nontender joints and there were no evident subluxations, contractures, ankylosis, or thickening.  Tr. at 797. Plaintiff's neurological examination was normal with physiologic and equal deep tendon reflexes throughout, no sensory deficit noted, and full (5/5) strength.  Tr. at 797. Examination of Plaintiff's extremities was normal with no cyanosis, clubbing, or edema; her pulses were physiologic and equal; there were no significant varicosities or trophic changes; and there was no evident muscle atrophy.  Tr. at 797.  Dr. Lee opined that Plaintiff had moderate limitations for activities involving prolonged standing or kneeling, and would be limited from activities requiring moderate or greater exertion.  Tr. at 125, 797.

The ALJ reasonably found that the April 2019 opinion of Dr. Lee was persuasive.  Tr. at 125, 797.  The ALJ acknowledged that the doctor's opinion was not referenced in vocational terms, but that the results of his examination were benign.  Tr. at 125.  The ALJ found that the opinion supported work at the light exertional level, and

was consistent with the doctor's examination and his findings (Tr. 125).  20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1), 404.1520c(c)(2), 416.920c(c)(2).

In fact, Dr. Lee's assessment of moderate limitations for prolonged standing or kneeling are not inconsistent with the RFC finding for light work.  *See Harrington v. Colvin*, 2015 WL 790756, *13 (W.D.N.Y. Feb. 25, 2015) (moderate limitations for sitting, standing, and walking would not prevent claimant from sitting, standing, or walking for six hours a day); *Nelson v. Colvin*, 2014 WL 1342964, at *12 (E.D.N.Y. Mar. 31, 2014) (RFC for light work supported by examiner's assessment of mild to moderate limitations).  Moreover, the opinion of a consulting physician, such as Dr. Lee, may constitute substantial evidence in support of the ALJ's determination.  *See Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983).

The ALJ also considered the opinion from Plaintiff's physician, Dr. Kidder, that Plaintiff "can work from a physical standpoint with limitations on how much stand[ing] she can do."  Tr. at 124, 474, 814.  Plaintiff's records from Dr. Kidder showed "good EF, mild LV hypertrophy, and no evidence of ischemia [and that her c]hronic mild LE edema [was] secondary to uncontrolled hypertension."  Tr. at 124, 474, 814.  The ALJ noted that whether a claimant is able to work is an issue reserved to the Commissioner but nevertheless found Dr. Kidder's opinion persuasive, as it was supported by the medical record and Plaintiff's activities of daily living.  Tr. at 124, 474, 814; SSR 96-5p.  The ALJ's RFC finding for a range of light work is consistent with Dr. Kidder's opinion.  Tr. at 118, 124.

Plaintiff argues that despite finding Dr. Kidder's and Dr. Lee's opinions "persuasive," the ALJ did not include all the limitations found by the doctors in the RFC. Dkt. No. 11-1, pp. 11-12. Plaintiff also argues that the ALJ improperly relied on his lay opinion to assess her left shoulder condition. Dkt. No. 11-1, pp. 13-14. This Court does not agree. There is no requirement that an ALJ adopt a medical opinion in its entirety to support an RFC finding. The Second Circuit Court of Appeals has acknowledged that an RFC does not even require a "supporting expert medical opinion"; rather, the ALJ alone retains the responsibility to determine a claimant's RFC. *See Tricarico v. Colvin*, 681 F. App'x 98, 101 (2d Cir. 2017) (*citing Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole."); *see Mitchell v. Astrue*, 2010 WL 3070094, at *3 (W.D.N.Y. Aug. 4, 2010) (stating that the ALJ's role is "to weigh the totality of the evidence in the record, both medical and non-medical, in order to resolve the conflicts and make a proper RFC assessment").

With respect to Dr. Kidder's opinion, Plaintiff argues that the ALJ did not explain how the RFC accounted for any limitations with standing. Dkt. No. 11-1, pp. 11-12. As an initial matter, Dr. Kidder did not provide any specific standing limitations noting only that Plaintiff could work from a physical standpoint with some undefined standing limitation. Tr. at 474. Dr. Kidder's examination did not reveal anything that would limit Plaintiff's ability to stand. For example, there was no calf tenderness, and only trace bilateral lower extremity edema. Tr. at 474. Moreover, Dr. Kidder's notes

11

indicate that the standing limitation was predicated on Plaintiff's subjective complaints. Dr. Kidder noted that "[Plaintiff] insists that she is physically not able to work anymore due to leg swelling, 'heart problems,' and depression.  She does not bring paperwork with her but she will send it."  Tr. at 474.  An ALJ is entitled to give less weight to a limitation that is based solely on subjective complaints.  *See Johnson v. Comm'r of Soc. Sec.*, 669 F. App'x 580, 581 (2d Cir. 2016) (holding that an adjudicator is justified in giving an opinion less weight when it reflects a claimant's subjective statements rather than medical judgment based on objective findings); *Polynice v. Colvin*, 576 F. App'x 28, 31 (2d Cir. 2014) (same).

Plaintiff also takes issue with Dr. Lee's opinion, arguing that the ALJ did not incorporate Dr. Lee's moderate standing and kneeling limitations into the RFC.  Dkt. No. 11-1, pp. 11-12.  However, the ALJ did exactly this in limiting Plaintiff to a range of light work with postural restrictions.  Dr. Lee opined that Plaintiff would be limited in her tolerance for prolonged standing or kneeling, not standing or kneeling generally.  Tr. at 797.  This opinion is not inconsistent with an RFC for a full range of light work.  *See, e.g., Harrington v. Colvin*, 2015 WL 790756, at *13-14 (W.D.N.Y. Feb. 25, 2015) ( holding that the medical opinion that a claimant was "moderately" limited in sitting, standing and walking was not inconsistent with the residual functional capacity that plaintiff could sit, stand, and walk for six hours a day); *Carroll v. Colvin*, 2014 WL 2945797, at *4 (W.D.N.Y. June 30, 2014) (recognizing that several courts have upheld ALJ's decisions that the claimant could perform sedentary or light work even where the claimant had moderate difficulty in prolonged sitting or standing); *Nelson v. Colvin*, 2014 WL 1342964, at *12 (E.D.N.Y. March 31, 2014) (holding that the ALJ's finding that

plaintiff could perform light work is supported by the doctor's opinion that the claimant had mild to moderate limitation for sitting, standing, and walking) (*citing Lewis v. Colvin*, 548 F. App'x 675, 678 (2d Cir. 2013); *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 34 (2d Cir. 2013) (rejecting plaintiff's argument that the consultative examiner's opinion was "incomplete and vague" and affirming ALJ's RFC for light work where the examiner found that claimant had a "mild to moderate limitation for sitting for a long time, standing for a long time, walking for a long distance, pushing, pulling, or heavy lifting"). In this regard, the RFC accommodates all of the restrictions contained in Dr. Lee's opinion.

Finally, any alleged error in failing to include a prolonged standing limitation was harmless as the record shows that Plaintiff's past relevant work as a customer service representative did not involve standing for long periods. Tr. 126, 155-57. The vocational expert testified that Plaintiff could perform her past relevant work as a customer service representative (sedentary work) as actually and generally performed. Tr. at 157. Sedentary work requires primarily sitting, and minimal lifting, standing, and other postural activities. 20 C.F.R. §§ 404.1567(a), 416.967(a); SSR 96-7p, 96-9p (explaining that postural limitations or restrictions related to such activities as climbing ladders, ropes, or scaffolds, balancing, kneeling, crouching, or crawling are not usually required in sedentary work).

Next, Plaintiff contends that the ALJ improperly relied on his own lay opinion in finding that her left shoulder condition was not severe. Dkt. No. 11-1, pp. 13-14. This Court does not agree. For an impairment to be considered severe, the impairment must "significantly limit your physical or mental ability to do basic work

13

activities." 20 C.F.R. §§ 404.1520(c), 416.920(c); SSR 85-28. Further, a severe impairment must have lasted or be expected to last for at least a 12-month continuous period. 20 C.F.R. §§ 404.1509, 416.909.

At step two, the ALJ concluded that Plaintiff's left shoulder condition was non-severe because it had not affected Plaintiff more than minimally for a duration of 12 months or longer. Tr. at 115. That is, Plaintiff's shoulder limitations appeared to arise only occasionally for short periods of time and under circumstances that suggest she was not as limited as she alleged. For example, Plaintiff reported that her shoulder hurt because she lifted something while moving apartments. Tr. at 115, 986. A few months later, by January 22, 2020, Plaintiff reported that her shoulder pain had improved but that she "hurt it again" when she tried to shovel snow a few days prior. Tr. at 115, 976. The ALJ acknowledged that Plaintiff had limited range of motion in her left shoulder, but the ALJ reasonably found in his April 2020 decision that there was no evidence that Plaintiff's left shoulder condition would last 12 or more consecutive months. Tr. at 114-15. Thus, Plaintiff failed to meet her burden of proving that her shoulder condition constituted a severe impairment. *See Bowen v. Yuckert*, 482 U.S. 137, 146-47, n.5 (1987); *Diaz v. Shalala*, 59 F.3d at 315 (citing *Berry v. Schweiker*, 675 F.2d at 467).

This Court also disagrees that all of the physical health opinions were stale as to Plaintiff's left shoulder and could not constitute substantial evidence supporting the ALJ's assessment of that impairment. Dkt. No. 11-1, pp. 13-14. "The mere passage of time does not render an opinion stale." *Whitehurst v. Berryhill*, 2018 WL 3868721, *4 (W.D.N.Y. 2018); *Cruz v. Comm'r of Soc. Sec.,* 2018 WL 3628253, *6

(W.D.N.Y. 2018) ("consultative examination is not stale simply because time has passed, in the absence of evidence of a meaningful chan[ge] in the claimant's condition"). Here, the ALJ properly determined that there was no evidence that Plaintiff's post-surgical shoulder limitations lasted for any significant period of time. Tr. at 114; see 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. §§ 4904.1509, 416.909. Accordingly, the Commissioner's determination should be upheld.

**Plaintiff's Depression and Anxiety**

Plaintiff argues that the ALJ erred by not finding her major depressive disorder and anxiety severe impairments at step two and by not including restrictions in her RFC to accommodate them. Having reviewed the record in its entirety, this Court finds that the ALJ properly assessed Plaintiff's mental limitations. At step two, the ALJ explicitly acknowledged Plaintiff's subjective complaints of depression and anxiety but found that the objective evidence did not support a finding that they were as debilitating as she alleged:

> The claimant testified she has major depressive disorder and some issues with anxiety, as well as she has past family problems. She is on Prozac and she sees her counselor twice a month. (Dr. Meer prescribes the Prozac). She contended her concentration is not very good, and she does not go out and socialize. The claimant testified she feels depressed, and hopelessness as to what happened to her children when she was younger, and she wishes her life was better. She cries whenever she gets "down" or when family members have difficulties. She experiences anxiety as she gets overly worried about things, she gets upset and feels out of place, and her symptoms include being paranoid, she gets quiet and does not want to talk to anybody.
>
> **With regard to the claimant's mental impairments, the evidence of record does not support a finding that the claimant experienced significant mental status abnormalities.** The claimant testified she had issues with her family, and the record so reflects she primarily has issues with her daughter, yet the evidence supports she was able to cope with stressors (i.e.: Issues with her daughter, boyfriend, and neighbors).

> On December 28, 2018, the claimant reported she has problems with her daughter going to school. (Exhibit 4F/21). On March 7, 2019, mental health treatment notes as to the claimant's strength reference she is able to follow simple instructions. Able to communicate needs. Able to cooperate with staff. Able to care for self or assist with activities of daily living care. She has supportive family/friends. Enjoys leisure interests. She reported much turmoil with her daughter and she stated she does not know how to communicate effectively with her daughter, as she does not feel she can voice her thoughts and/or express her feelings. (Exhibit 4F/11). The notes reference the claimant left a voicemail on her counselor's telephone indicating her brother passed away and she needed to reschedule her appointment. (Exhibits 4F, 5F). In April 2019, the claimant was able to practice interpersonal skills with recent job interview last week. The claimant has a second interview and has another with Women's Shelter. The claimant was reported to be engaged, well groomed, on time, and future oriented. (Exhibit 5F/17). Around January 2020, although she reported difficulties interacting with her landlord and neighbors, after she moved there is no report of difficulties interacting with landlord/neighbors. (Exhibit 13F). Notably, the claimant previously stated in a Function Report that she does not have any problems getting along with bosses, teachers, police, landlords are other people in authority and she has never lost a job because of problems getting along with people. (Exhibit 3E/10). Although the claimant testified, she does not socialize treatment notes indicate she goes to the soup kitchen and she utilizes her caseworker in the community, and there is no indication she had difficulty interacting with her caseworker. (Exhibit 13F).Behavioral health notes at Chautauqua Outpatient Behavioral Health and/or Joyce Towers MSW, the social worker's notes support the claimant's mental status exam are within normal limits. (Exhibits 9F, 10F, 13F). In addition, more recent treatment notes with the claimant's medical providers also support her mental status exams are within normal limits. (Exhibits 13F, 14F).
>
> **In reviewing the evidence, the record does not support a finding that the claimant's symptoms resulted in marked or extreme mental status abnormalities or work-related limitations.** There is no description in the medical evidence of record of any significant abnormalities of cognitive functioning, thought processes, thought content or speech. There is no description of hallucinations, delusions, paranoia or psychomotor agitation/retardation.

Tr. at 116.  In the view of this Court, the ALJ sufficiently supported his determination that Plaintiff's depression and anxiety were not severe.

16

Even if the ALJ erred in his severity analysis of Plaintiff's left shoulder, this was no more than a harmless error. The Second Circuit Court of Appeals has explicitly held that any step two error is cured where, as here, the ALJ found other severe impairments and proceeded beyond step two. *See Reices-Colon v. Astrue*, No. 12-3013, 2013 WL 1831669, at *1 (2d Cir. 2013) (summary order); *Stanton v. Astrue*, 370 Fed App'x 231, 233 n.1 (2d Cir. 2010).

Plaintiff argues that the ALJ failed to develop the record with missing psychiatric records from Dr. Meer of Chautauqua County Mental Health ("Chautauqua"), and that his failure to do so warrants remand. Dkt. No. 11-1, pp. 15-18. This Court does not agree. As an initial matter, the record contained dozens of pages from Chautauqua from the relevant period including therapy notes from Plaintiff's social worker Joyce Towers and a psychiatric evaluation. Tr. at 870-95. Notably, during her psychiatric evaluation, Plaintiff was cooperative, had good eye contact, normal speech, a normal affect, normal thought content and perception, goal-oriented thought processes, and intact associations. Tr. at 877. She was oriented in all three spheres, had intact attention, concentration, and recent and remote memory, and good insight and judgment. Tr. at 877. In this regard, there is nothing to suggest that Dr. Meer's notes would have compelled a different result.

Moreover, Plaintiff has been represented by counsel since May 2019. Tr. at 227-30. Plaintiff's attorney explicitly stated at the April 2020 hearing that the record was complete. Tr. at 139. At no point before, during, or after the administrative hearing did Plaintiff or her attorney request assistance in obtaining or submitting additional

17

...
...
...
...
...

records, or request additional time to submit records. *See Jordan v. Comm'r of Soc. Sec.*, 142 F. App'x 542, 543 (2d Cir. 2005) (finding that the ALJ did not fail to develop the record where the ALJ did not contact the physician whom the plaintiff had mentioned at the hearing where the ALJ kept the record open). Further, Plaintiff submitted additional evidence to the Appeals Council, including records from Chautauqua, but none from Dr. Meer. Tr. at 8-35. Plaintiff also did not argue in her request for review that she was missing critical records from Dr. Meer. Tr. at 1-7. In this respect, there were no "obvious gaps" in the administrative record that the ALJ was required to remedy. *Rosa v. Callahan*, 168 F.3d 72, 79, n.5, 80 (2d Cir. 1990).

Plaintiff clearly disagrees with the ALJ's evaluation of the evidence. However, the substantial evidence standard is so deferential that "there could be two contrary rulings on the same record and both may be affirmed as supported by substantial evidence." *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 127 (2d Cir. 2012). That is, "once an ALJ finds the facts, [a reviewing court] can reject those facts only if a reasonable factfinder ***would have to conclude otherwise***." *Brault*, 683 F.3d at 448 (emphasis added). This case does not present such a situation. For all of the foregoing reasons, this Court finds that the ALJ's decision is free from legal error and is supported by substantial evidence.

## **CONCLUSION**

For the reasons stated herein, Plaintiff's motion for judgment on the pleadings (Dkt. No. 11) is DENIED, and the Commissioner's motion for

judgment on the pleadings (Dkt. No. 12) is GRANTED.  The Clerk of the Court is directed to close this case.

**SO ORDERED.**

DATED:     Buffalo, New York
           November 14, 2022

                                              *s/ H. Kenneth Schroeder, Jr.*
                                              **H. KENNETH SCHROEDER, JR.**
                                              **United States Magistrate Judge**